UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| MARCUS HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21 cv 50392 |
| | ) | |
| ROCKFORD HOUSING AUTHORITY, | ) | |
| a municipal corporation, and LAURA SNYDER, | ) | |
| CEO, individually and in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

This is a racial discrimination and retaliation in violation of Title VII of the Civil Rights

Act, and violation of COBRA case brought by the Plaintiff, Marcus Hill, against the

Defendants, Rockford Housing Authority, a municipal corporation, and Laura Snyder.

Damages for lost wages and benefits and for emotional distress are sought against the

Defendants. Trial by jury is demanded.

## JURISDICTION

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000 et.

   seq.

2. Venue is proper under 28 U.S.C. § 1391 in that the Plaintiff resides in and all of the acts

   complained of took place in the Northern District of Illinois, Western Division.

3. This Court has jurisdiction in this cause under 28 U.S.C. Sections 1331.

## PARTIES

4. The Plaintiff, Marcus Hill is an African American male who resides in the City of Rockford, County of Winnebago, and State of Illinois.

5. The Defendant, Rockford Housing Authority ("RHA") is an Illinois municipal corporation, created and existing under the Illinois Housing Authorities Act, 31 Comp. Stat. 10/1 et. seq. The RHA is a Public Housing Agency within the meaning of 42 U.S.C. Section 1437.

6. The Defendant, Laura Snyder ("Snyder"), was, at all times relevant hereto, the CEO of the RHA.

7. At all times pertinent hereto the RHA and Snyder acted in their official capacity and under color of state law.

## FACTUAL ALLEGATIONS

8. The Plaintiff began employment with the RHA on or around May 2016. Plaintiff's most recent position was Resident Services Manager. Plaintiff was terminated by the RHA on February 11, 2021.

9. At all times relevant hereto, Laura Snyder was the Chief Executive Officer of RHA and, as such, was responsible for and oversaw the day-to-day operations/management of the RHA.

10. On May 11, 2020, the RHA instituted a policy setting forth directives to employees with regard to the COVID-19 Pandemic.

11. The policy was entitled the RHA Emergency Covid-19 Infectious Disease Control Policy ("COVID-19 Policy").

12. Over time, as additional recommendations were adopted by the Winnebago County Health Department, the RHA COVID-19 Policy was amended to reflect current recommendations.

13. On information and belief, the RHA COVID-19 Policy was administered in a discriminatory manner; the policy was utilized as a pretextual basis to discipline, demote, and/or terminate black employees.

14. On information and belief, from the institution of the RHA COVID-19 Policy until Plaintiff's termination on February 11, 2021, despite multiple violations of the policy by white employees, no white employee was ever disciplined or subject to an adverse employment action as a result of the RHA COVID-19 Policy.

15. Black employees, on the other hand, including Plaintiff, were disciplined, taken off work without pay, asked to use their PTO time for time off due to required quarantines, less likely to be allowed remote working options, and even terminated, with the RHA citing to the COVID-19 Policy as a pretextual basis for abject racial discrimination.

17. The COVID-19 Policy was identified as the basis of Plaintiff's termination because Plaintiff attended a basketball scrimmage among Rockford youth players at a local Boys' and Girls' Club while Plaintiff was under a COVID-19 quarantine mandated by the RHA.

18. The basketball scrimmage was not attended as a part of Plaintiff's job duties, and occurred on a Saturday, a non-work day.

19. Nevertheless, and contrary to the RHA's other established protocol/practice, Plaintiff was terminated on a day when he was off work/had appropriately taken PTO, without an investigation by his immediate supervisor, Human Services Director, Odessa Walker (a black woman), the H.R. Manager, Monique Jones (a black woman), or the RHA general counsel Tim Horning (a white man). Further, contrary to the RHA's established protocol/practice, none of these individuals was present at the time Plaintiff's termination was communicated to him.

20. The only individuals present when Plaintiff was terminated were Laura Snyder and H.R. Generalist, Te'aira Robinson.

21. On information and belief, Snyder's stated reason for Plaintiff's termination was racially motivated and the RHA's/Laura Snyder's stated basis for the termination, alleged violation of the COVID-19 Policy, was pretextual.

22. Multiple white employees had violated the COVID-19 Policy without incident. Specifically, white employees had, on numerous occasions, showed up to work with symptoms of COVID-19 and/or showed up to work with a known case of COVID-19 in their household, without any disciplinary action whatsoever, much less termination.

23. During Plaintiff's tenure at the RHA, Defendants had a pattern and practice of discriminating against black employees, even beyond the COVID-19 Policy.

24. RHA employees and even RHA personnel in supervisory roles were often heard making racist statements while on the job at the RHA. These statements were reported, however, nothing was ever done about them.

25. In or around April 2019 when faced with a government shutdown and likely need for a reduction in force ("RIF"), a meeting was held of the RHA leadership. During that meeting, Laura Snyder made a list of employees that she felt should be laid off as a part of the RIF.

26. At the time the list was made, approximately seventy (70) plus percent of the employees of the RHA were white/non-minority. Nevertheless, every single individual included on Snyder's list was black.

27. Plaintiff was included on Snyder's list.

28. After Plaintiff's termination, he called both his immediate supervisor, Odessa Walker, and the H.R. Manager, Monique Jones (both black women), to discuss the fact that he was

terminated without either of them being present, and he felt that his termination was discriminatory and/or racially-motivated.

29. Jones was not allowed to investigate Plaintiff's termination as would ordinarily be the practice at the RHA.

30. Moreover, shortly thereafter, the RHA challenged Plaintiff's application for unemployment benefits. On information and belief, outside incidents of criminal activity, such as theft or assault, the RHA had never challenged an employee's application for such benefits.

31. On information and belief, the RHA's challenge of Plaintiff's application of employment benefits was in retaliation for Plaintiff reporting his termination to Walker and Jones.

32. The RHA also failed to follow its legal duties to provide Plaintiff with a notice of his right to elect continuation coverage under COBRA within fourteen (14) days of his termination, and, as such, he and his dependents did not have healthcare coverage during his period of unemployment.

33. On April 28, 2021, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC). A copy of the charge is attached hereto as Exhibit A.

34. Plaintiff received a Dismissal and Notice of Rights dated July 27, 2021, a copy of which is attached hereto as Exhibit B.

COUNT I
RACIAL DISCRIMINATION-HOSTILE WORK ENVIRONMENT

35. The Plaintiff re-alleges paragraphs 1-34.

36. As a proximate cause of the Defendant's conduct as described herein, the Plaintiff suffered damages in the form of lost wages, lost benefits, and emotional distress with physical manifestations.

WHEREFORE, the Plaintiff prays that this Court grant a judgment in favor and for the following relief:

     a. Back pay and front pay for lost wages;

     b. The monetary equivalent of the value of the benefits that she lost as a result of the Defendant's wrongful conduct;

     c. Compensatory damages for the emotional distress caused by the Defendant's conduct;

     d. Punitive damages;

     e. Reasonable attorney's fees and reimbursement for her costs in pursuing this claim; and

     f. Such other relief as the court determines to be right and just.

COUNT II
RETALIATION

37. Plaintiff re-alleges paragraphs 1-34.

38. As a proximate cause of the Defendant's conduct as described herein, the Plaintiff suffered damages in the form of lost wages, lost benefits, and emotional distress with physical manifestations.

WHEREFORE, the Plaintiff prays that this Court grant a judgment in favor and for the following relief:

     g. Back pay and front pay for lost wages;

     h. The monetary equivalent of the value of the benefits that she lost as a result of the Defendant's wrongful conduct;

      i.   Compensatory damages for the emotional distress caused by the Defendant's

         conduct;

      j.   Punitive damages;

      k.   Reasonable attorney's fees and reimbursement for her costs in pursuing this

         claim; and

      l.   Such other relief as the court determines to be right and just.

COUNT III
VIOLATION OF COBRA

39. Plaintiff re-alleges paragraphs 1-34.

40. Prior to his termination, Plaintiff and his dependents were covered by a group health plan

    through his employment with Defendant.

41. Upon his termination, Defendant did not provide Plaintiff with an election of continuation

    coverage as required by COBRA, 29 U.S.C. § 1161(a).

42. That as a proximate and direct result of the Defendant's conduct in violation of COBRA

    Plaintiff suffered damages in the form of emotional distress as well as the costs of uncovered

    medical care and treatment.

WHEREFORE, the Plaintiff prays that this Court grant a judgment in favor and for the following

relief:

      m.  Back pay and front pay for lost wages;

      n.  The monetary equivalent of the value of the benefits that she lost as a result of the

         Defendant's wrongful conduct;

o.  Compensatory damages for the emotional distress caused by the Defendant's

   conduct;

p.  Punitive damages;

q.  Reasonable attorney's fees and reimbursement for her costs in pursuing this

   claim; and

r.  Such other relief as the court determines to be right and just.

Marcus Hill, Plaintiff

_____

By: One of his Attorneys
Faulkner Spears and Chudoba LLC

Brandi L. Chudoba (ARDC #6282659)
**FAULKNER SPEARS & CHUDOBA, LLC**
308 West State Street, Suite 115
Rockford, IL 61101
P: (815) 963-8050 / F: (815) 963-8057
eservice@fsclegal.com

<u>VERIFICATION</u>

The undersigned declares under penalty of perjury that he is the plaintiff in the above action, that he has read the above Complaint, and that the information contained therein is true and correct. 28 U.S.C. § 1746; 18 U.S.C. §1621,

Executed at Faulkner Spears & Chudoba, LLC on October 12, 2021

<u>/s/ Marcus Hill</u>
Marcus Hill